SARAH DEWITT ET AL. v. ANDREW HERRON.

1. The act of 1843 (Hart. Dig., 637), providing for a change of venue in cases where the judge was interested, was not supplied and repealed by the act of 1846, nor by the Constitution.[1]

2. Though there was no statute in 1847 specially authorizing a change of venue where the judge was related to one of the parties, a reasonable construction of the Constitution and laws then in force would give the district judges full authority "to order a change of venue of a case whenever the judge was disqualified to sit in the case."

3. See this case for acts of an attorney against whom fraud was charged, held not sufficient to sustain the charge.

APPEAL from Travis. Tried below before the Hon. E. M. Pease, as Special Judge.

The litigation which terminated with this suit began in 1846, and involved title to one league of land adjoining the town of Seguin. The first suit was brought by the administrator of Thomas R. Miller, through whose heirs Herron claimed title, and will be found reported in 9 Texas, 239.

This suit was in trespass to try title, and brought in Guadalupe county, on the twenty-ninth of January, 1854,

---

[1] Rogers v. Watrous, 8 Texas, 62, overruled on this point, though not noticed in the opinion.

by Sarah Dewitt and the heirs of her husband, Green Dewitt.

Herron, on the twenty-fifth of July, 1854, plead not guilty; and specially, that in 1830, one Joseph D. Clements and Green Dewitt entered into an agreement to build a grist and saw mill on the Guadalupe river, for which Clements obtained a grant for three leagues of land; that by the terms of the agreement Green Dewitt was entitled to first choice of one out of the three leagues; that he selected the league in controversy, and thereby became equitably entitled to said league; that in 1834, while Dewitt was the equitable owner of the land, and before he received any conveyance or title from Clements, he sold it to Thomas R. Miller; that Miller paid him all the purchase money; that he gave Miller an order to Joseph D. Clements, requiring him to make the title to Miller, and that the land remained the property of Miller until he died in 1836, and since then it belonged to his heirs; that plaintiffs were neither the heirs nor assignees of Miller; that they never had actual possession of the land; that Herron had acquired his title and possession from the heirs of Miller; that Green Dewitt died in 1835, and Miller was killed in 1836; that J. D. Clements died in 1844; that after Dewitt sold the land to Miller he never claimed it, and that Clements up to his death recognized the title of Miller to the land.

That none of Green Dewitt's heirs ever claimed the land until 1841 or 1842, when some of the papers of Thomas R. Miller had fallen into the hands of some person who had scattered them in various parts of the United States; that the order from Green Dewitt to J. D. Clements to make the title of the land to Miller was lost and never had been found.

That Clements was administrator of Thomas R. Miller's estate until 1844, when he died; that after the heirs of

Green Dewitt first claimed the land in 1841 or 1842, to 1846, the country was in a state of alarm, and the people about to abandon the country; that the judge of the court and nearly all the lawyers were taken prisoners to Mexico, and kept a long time.

That the unsettled condition of the country, and the fact that Clements expected to recover the order, and the uncertainty as to whether the heirs of Green Dewitt would enforce their claim to the land, caused Clements to delay the institution of suit to enforce the claim of Miller until he died; that John P. Hawkins was appointed administrator of T. R. Miller, at the October term, 1846, of the District Court of Gonzales; the said Hawkins brought suit against C. C. Dewitt, Christopher C. Dewitt, Sarah Dewitt, as the administratrix of Green Dewitt and in her own right, and A. H. Jones and Edward Dickerson, as executors of the estate of J. D. Clements, for the land in controversy.

That the suit was removed to Bexar county, and at the Fall term, 1850, judgment was rendered in that cause, and affirmed by the Supreme Court at Austin, at Fall term, 1852, and the title of the land sued for decreed to be in the heirs of Thomas R. Miller.

The defendant admitted that the plaintiffs were the only heirs of Green Dewitt.

On the twenty-ninth of October, 1856, the plaintiffs filed an amended petition and replication to the defendant's answer, denying all the allegations in the answer not specially admitted; they admitted the contract between Green Dewitt and Joseph D. Clements, by which Green Dewitt became the equitable owner of the land sued for, but denied that Dewitt ever sold it to Miller, and alleged that Dewitt owned it at his death; denied that Miller paid Dewitt anything for the land, or that he ever executed an order, in favor of Miller, to Clements, as

stated by defendant, or that either Miller's heirs or representatives ever had any legal or equitable interest in the land, and plead lapse of time, stale demand, and statute of limitation of ten years.

Plaintiffs plead that the former suit was illegally brought in Guadalupe county; that the succession of the estates of Clements and Green Dewitt were opened in the Probate Court of Gonzales county, and that the District Court of Guadalupe county had no jurisdiction over the parties or the subject matter; that neither the District Court of Guadalupe or Bexar county had any jurisdiction to render judgment in that suit in favor of Hawkins; that the venue in said cause was changed from Guadalupe county to Bexar county at the Fall term, 1847, without the consent of the plaintiffs, Sarah and C. C. Dewitt, and that the judgment then rendered and the affirmance of the judgment by the Supreme Court were both void. They alleged that by a judgment of the District Court of Gonzales county, rendered at the Fall term, 1841, all the title that Clements had to the land in controversy was vested in Sarah Dewitt, for the heirs of Green Dewitt; and charged that the judgment rendered in the District Court of Bexar county was procured by fraud between the administrator, J. P. Hawkins, and Andrew Neil, who was at the time the attorney of Sarah and C. C. Dewitt; that at the time they employed him, and when the judgment was rendered, he, Neil, had a deed to himself for an interest in the land in controversy from the heirs of Miller; that he concealed the fact from plaintiffs, and that he failed to plead the proper defenses, or to prepare the case for the Supreme Court, for fraudulent purposes; that the defendant knew this before he purchased the land, and that he had not paid the purchase money.

C. C. Dewitt plead that his counsel advised him that his purchase of the land at administrator's sale was void;

hence he joined the other heirs of Green Dewitt in this suit, and asks that their distributive shares may be decreed to them, and that the title set up by defendant be annulled.

On the ninth of October, 1856, the defendant filed an amended answer containing numerous exceptions. He alleged that since the rendition of the judgment in favor of Hawkins, as administrator of Thomas R. Miller, on the twenty-fourth of May, 1852, he, Herron, purchased the land from the devisee of Thomas R. Miller for a full and adequate consideration, without any knowledge of the fraud practiced by Andrew Neil, or any other unfairness in obtaining that judgment; that he had, in good faith, put permanent and valuable improvements on the land worth ten thousand dollars, and alleged that the judgment in favor of Hawkins was in all things affirmed by the Supreme Court at the November term, 1852.

At the Fall term, 1856, the venue was changed from Caldwell to Travis county, by agreement of the parties.

On the first of July, 1859, the plaintiffs filed an amended petition, and alleged that if Green Dewitt ever did agree to sell the land to Thomas R. Miller, it was a parol executory contract, not reduced to writing, and never consummated by Dewitt and Miller; that neither J. D. Clements nor Green Dewitt had any title to the land at the date of the contract; that the land in controversy was not then designated; that the sale from Dewitt to Miller, as alleged by the defendant, was a parol sale; that Dewitt never delivered the possession of the land to Miller, or any one for him, and that therefore the sale was void; that when the former suit was brought by Hawkins against Sarah Dewitt and C. C. Dewitt, Andrew Neil had a deed from one of the heirs of Thomas R. Miller to an undivided interest in the land, and was thus directly interested with

the heirs of Miller in the land; that Sarah and C. C. Dewitt employed Neil to defend them in that suit, without any knowledge of his interest, and that he concealed it from them until after the judgment was rendered in the District Court of Bexar county; that Neil, without the knowledge of plaintiffs, colluded and confederated with the administrator of said Miller, and with one or more of the heirs or attorneys of the administrator, for the purpose of enabling them fraudulently to recover the land; that he willfully and fraudulently neglected and failed to plead the proper legal defenses which he, said Neil, well knew would defeat that suit; that he fraudulently lost that suit and suffered said judgment to be rendered to hold the interest he had purchased; that in consequence of the known right of the plaintiffs to the land, the defendant purchased it for thirty thousand dollars less than its value; and if it should be determined that the defendant had paid the purchase money, they asked to be allowed to refund it, and be subrogated to the rights of defendant.

On the first day of February, 1859, Herron filed replication to plaintiffs' amended petition, and denied the fraud alleged in obtaining the judgment plead in bar, and all knowledge of or complicity in the fraud charged, and alleged that he bought the property for a valuable consideration, without any knowledge of plaintiffs' claim, and plead the statute of four years in bar.

On the third of July the defendant filed amended exceptions, and averred that he purchased in good faith, and set up improvements in good faith to the value of thirty thousand dollars.

On the same day the plaintiff, C. C. Dewitt, made an affidavit that he believed the receipt specified and set forth in defendant's answer, purporting to have been executed by Green Dewitt to Thomas R. Miller, dated the

sixteenth of May, 1834, for one hundred dollars, in full payment for the land in controversy, was a forgery.

The transcript of the proceedings in the Bexar District Court, in the former suit, disclosed the fact that in September, 1849, the venue of that cause was changed, over the objections of Dewitt, from Guadalupe county, where the suit was instituted, to the county of Bexar, in another district, "because of the relationship of the judge to one of the parties." The judgment in that suit was objected to by Mrs. Dewitt, first, because, the venue having been changed without authority of law, the District Court of Bexar county acquired no jurisdiction of the case, and its judgment, and that of the Supreme Court affirming it, were void. This objection was overruled; exceptions were taken, and the ruling assigned for error.

It was proven that Andrew Neil was the attorney who represented the heirs of Dewitt in the former suit in the court below; that he had a deed to one-sixth of the land from the heirs of Miller, of date November, 1839, and not recorded in Guadalupe county, where the land lay; that after the former suit was lost for the heirs of Dewitt, in the District Court, the following notice was given by Neil to the public:

"LOOK OUT.—I understand that some persons are offering to sell certain lands belonging to the heirs of Thomas R. Miller, deceased. I of course don't care how many buy said land, but I would desire all who wish to buy to wait till the estate is settled up; and by referring to documents on file in Gonzales county clerk's office, they will find that since 1839 I have had an interest in that estate, which will have to be bought and paid for before a good title can be made to any one. My claim will be established at the right time.

"February 17, 1851."        "A. NEIL, of Seguin.

The defendant read in evidence the following receipt, about the signature to which the testimony was conflicting :

"Received of Thomas R. Miller, one hundred dollars, in part payment for a certain choice league of land that I am entitled to from the government, which will be seen by reference to a contract between J. D. Clements and myself, for building a saw and grist mill on or near the Guadalupe river.

"GREEN DEWITT.

"May 16, 1834."

It was shown by the transcript that in the former suit Andrew Neil was the attorney for Dewitt, and that the cause was brought to this court without statement of facts or bills of exception.

The court, among other charges, gave to the jury the following :

"7. The mere fact that, at the time the judgment was rendered in favor of the administrator of Thomas R. Miller, against Christopher C. and Sarah Dewitt, there was a deed on record in Gonzales county from one of the heirs of said Miller to Andrew Neil, the attorney of said Dewitt in the defense of said suit for a part of the land in controversy in that suit, is not of itself such a circumstance as shows that the judgment was fraudulently obtained."

The giving of this charge was also assigned for error.

It was proved on the trial that Herron purchased the land pending the former suit, and by the terms of his deed took the land "subject to all the litigation and costs with which the same might be encumbered."

Several points of interest were involved, which, not being noticed in the opinion, are therefore omitted in the statement of the case.

Verdict and judgment for defendant, from which plaintiffs appealed.

*Chandler, Turner & Carleton*, for appellants.—1. The first error assigned was the ruling of the court below permitting the evidence of French Smith and others to the declarations of Clements.

We have looked in vain in all that has been said by the elementary writers, as well as by the courts, and we are unable to find a single authority to sustain the ruling of the court below upon this point. They were declarations of a third party, not under oath, not in the presence of the party whose interest was to be affected by them, and made in reference to a contract that he was no party to, and which he did not pretend to have heard; nay, more, declarations made years after the man whose interest is to be affected by it was dead. Clements was not in possession of the land when he made the declaration, and we are not informed by the evidence whether or not Clements made the declaration before or after October 8, 1841, when the District Court of Gonzales county divested him of the title and vested it in the heirs of Dewitt. If the declarations were made before that date, he was interested as the executor of Miller; consequently his declarations were not admissible. (See Starkie's Evidence, Vol. 2, p. 550, Vol. 3, p. 1300 ; 1 Greenleaf's Evidence, p. 128, Sec. 98 ; 1 Cowen & Hill's Notes on Phil. on Evidence, Note 78, and cases cited.)

We respectfully ask the court to examine the last note and read the leading cases there cited.

The leading American case, being the one referred to in Cowen & Hill's Notes above, and there recognized as stating the settled rule of law, is the case of Mina Queen v. Hepburn, 7 Cranch R. P., 290 ; 2 Cond. R., 498. (See also Bartlett v. Delprat *et al.*, 4 Mass., 701 ; Wilmington v. Burlington, 4 Pick., 174.)

In the case of Van Deusen v. Turner, the Supreme
Court of Massachusetts said: "The general rule is that
the declarations of a deceased person are not admissible,
being rejected as hearsay and not under oath, with a few
exceptions as to genealogy, etc." (12 Pick., 532; Rot-
hoitz v. Bagby, 16 Texas, 660.)

2. The first two objections to the reading in evidence
the transcript of the record from the District Court of
Bexar county, in the case of Hawkins, Administrator of
Thomas R. Miller, v. Sarah and C. C. Dewitt *et al.*, are,
that the succession of Dewitt and of Clements were pend-
ing in the Probate Court of Gonzales county, and that
under the law they could not be sued out of that county;
but this court has decided that to be simply a plea of
privilege; and as the redoubtable Andrew Neil, the attor-
ney of the Dewitts, did not plead to the jurisdiction of
that court, we abandon this point.

The third objection to reading that record in evidence
deserves a serious and thorough investigation, for it is
one of the most vital questions in this very extraordi-
nary and important case. This point raises the question
of jurisdiction of the District Court of Bexar county to
try and determine the cause, and the graver question of
determining from the record whether that judgment is
void or only voidable; if it is voidable only, the objection
is not well taken in this case; if it is absolutely void, this
case must be reversed.

The first clause in the 14th Section of the 4th Article of
the Constitution of 1846 reads as follows: "No judge
shall set in any case wherein he may be interested or
where either of the parties may be connected with him by
affinity or consanguinity within such degrees as may be
prescribed by law, or where he shall have been of counsel
in the cause."

The next paragraph in that section that relates to dis-

trict judges and courts reads as follows: "When the judges of the District Courts are thus disqualified, the parties may by consent appoint a proper person to try the said case, and the judges of the said courts may exchange districts or hold court for each other when they may deem it expedient, and shall do so when directed by law."

It is further provided by the 14th Section of the 7th Article of the general provisions of the Constitution that "The Legislature shall provide for a change of venue in civil and criminal cases." (See Pas. Dig., p. 64.)

Now, let us turn to the acts of the Legislature which created the courts and limited their territorial jurisdiction, and the law providing for the change of venue, and. see if we can find any authority for the court to change the venue for the cause shown in the record.

The first act of the Legislature in regard to the District Courts, after the adoption of the Constitution, is as follows:

"That the regular terms of the District Courts be and. they are hereby postponed until further provided by law." (See Act March 14, 1846, p. 6.)

The next was the act of the eleventh of April, 1846, fixing the territorial jurisdiction of the District Courts of the State, and the 2d Section of that article reads as follows:

"That the following named counties shall compose the Second Judicial District, to-wit: Comal, Guadalupe, Travis, Bastrop, Fayette, Lavaca, De Witt and Gonzales."

The 4th Section — "That the following named counties shall compose the Fourth Judicial District, to-wit: Calhoun, Jackson, Victoria, Goliad, Refugio, San Patricio, Nueces and Bexar." (See Act of 1846, pp. 59–60.)

The above named counties were in the two different districts when the venue was changed and the cause tried.

The next act to organize and regulate the district courts is the act of May 11, 1846. The 1st Section reads as follows:

"That the Governor shall nominate, and by and with the advice and consent of the Senate appoint, one judge for each judicial district, who shall be commissioned by the Governor, and shall reside in some one of the counties of which his district is composed, and shall hold courts in each county, at the court house, or such other place as may be designated by law, at such time and in such manner as may be prescribed by law."

The above section speaks in the imperative mood, and says the judge shall reside in some one of the counties of which his district is composed. The 2d Section gives the district judges jurisdiction of all suits for the recovery of land (O. & W. Dig., pp. 107, 108, etc.) that is within their respective jurisdictions—the limits of their judicial districts, of course, for they have no jurisdiction over any other or more counties, or in any other county, beyond that conferred upon them by the act just cited, unless they acquire it in the manner prescribed by the 14th Section of the 4th Article of the Constitution, to-wit, "by exchanging districts or holding courts for each other," and in such other modes as we may find provided by law before the Fall term of 1848.

On the same day, the eleventh of May, 1846, the Legislature passed an act fixing the time of holding courts in the several judicial districts in the State. (Acts of 1846; pp. 270, 276.)

On May 13, 1846, the Legislature passed an act to regulate proceedings in district courts, and in the last clause of the 1st Section of that act it provides that "In all cases where the recovery of land or damages thereto is the object of the suit, in which case suit must be instituted in the county where the land, or part thereof, is situated."

Thus far we have been unable to find any provision of the Constitution or laws that would give the District Court of Bexar county jurisdiction over the subject matter or the parties by virtue of the change of venue for the reasons disclosed by the record. But we will pursue the statute, and examine all its provisions for changing the venue from one county or district to another, and see if we can find any law authorizing it.

In the act of the eleventh of May, 1846, to organize the District Courts and to define their powers and jurisdiction, we find the following in Section 14: That the District Courts may "order a change of venue for the trial of any suit, civil or criminal, under the rules and regulations prescribed by law." And in Section 15, "That when any judge of the District Court may be interested in causes pending in his district, or where any of the parties may be connected with him by consanguinity or affinity within the third degree, or when the judge has been of counsel in the causes, he may exchange districts with any judge who is not subject to like disabilities; any judge may hold courts with any other district judge, and exchange of districts may be made whenever the judges exchanging may deem it expedient." (See Hartley's Digest, 238.) We have now cited every provision of the Constitution and the statutes upon this point which were in force at the time the venue was changed to Bexar county.

We have been thus particular in citing every provision of the Constitution and the statutes for the purpose of showing that none of them conferred any authority upon the judge in Guadalupe county to order the change of venue for the cause shown in the record, and that the District Court of Bexar county had no jurisdiction over the subject matter or the parties to the suit; hence the judgment was and is absolutely null and void.

To leave out of view all the fraud charged upon the attorney, Neil, in conducting the defense for the Dewitts, with a deed in his pocket for a part of the land which he had purchased from one of the heirs of Miller, making it greatly to his (Neil's) interest to lose the suit for the Dewitts and let Miller's heirs gain it, Neil's failing to make the objection in that case, as it was his duty to do, could not confer jurisdiction upon the District Court of Bexar county; or if Neil had consented to it, could not have given the District Court of Bexar county jurisdiction. (1 Texas, 48; Swigley v. Dickson, 2 Texas, 192.)

But to further meet the argument on the other side, that the objection should have been made on the hearing of the case from Bexar when it was in the Supreme Court, this court has said, in the case of Titus v. Latimer, 5 Texas, 433, that "neither the lapse of time nor practice of the courts can vindicate the exercise of jurisdiction under acts which are repugnant to the Constitution." And the court might have added, repugnant to or not authorized by law. And again, in the case of Able v. Bloomfield, 6 Texas, 263, this court said: "Want of jurisdiction of the subject matter of the suit will arrest a cause at any stage of the proceedings." (See Titus v. Latimer, 5 Texas, 433; Able et al. v. Bloomfield, 6 Texas, 263; Horan v. Wahrenberger, 9 Texas, 313; Aulanier v. The Governor, 1 Texas, 653; Foster v. McAdams, 9 Texas, 542; Bowers v. Chaney et al., 21 Texas, 363; Wynns et al. v. Underwood, 1 Texas, 48; Oakly v. Aspinwall, 3 Comstock, 547; Bates v. Thompson, 2 Chip., 124; Hill v. Wait, 5 Vt., 124; Low v. Rice, 8 Johns., 409; 23 Texas, 112–113; Baker v. Chisholm, 3 Texas, 157; Lyell v. Guadalupe County, 28 Texas, 57; 24 Texas, 190; 28 Texas, 230; Central Bank of Georgia v. Gibson, 11 Ga. 453.)

In addition to the authorities already cited to sustain us in this position, we refer to the following cases, all to

the same question: Hardeman v. Short, 18 Ill., 59; Johnson v. Johnson, 30 Ill., 215; Smith v. Dubuque Co., 1 Clarke, Iowa, 492; Cooper v. Sunderland, 3 Clarke, Iowa, 130; Oakley v. Aspinwall, 3 Comstock, 547; Lanning v. Carpenter, 23 Barbour, 402; Bumstead v. Bumstead, 31 Barbour, 661; The State v. Richmond, 6 Foster, N. H., 232; Gilleland v. Sellers, 2 Ohio, 223; Vose v. Morton, 4 Cush., 27; Sears v. Terry, 26 Conn., 273; Wicks v. Ludwig, 9 Cal., 173; Boswell's Lessee v. Otis, 9 Howard, 336; Shriver v. Lynn *et al.*, 2 Howard, 43.

The deed and mortgage show upon their faces that Herron was engaged in a speculating sort of gambling transaction; he bought a chance of some land—about $80,000 worth of property—for $17,600.

Judge Oldham testified that the league in controversy was worth ten dollars per acre in 1859, which is $44,280, over double what he agreed to give for all the property he purchased.

The next point is the objection urged to the reading of the affirmance of the judgment in the former case by the Supreme Court; and this point, we submit, has been fully covered by the discussion of the two last points, for if the judgment of the court *a quo* was void, no affirmance of that judgment could give it validity, and the two judgments must stand or fall together.

3. The eighth point saved in the plaintiff's bill of exceptions is, that the plaintiff objected to the evidence contained in the statement of facts tending to prove that Green Dewitt gave Thomas R. Miller an order on Joseph D. Clements, directing him to convey the land in controversy to Miller, because no proof had been made of the loss or destruction of the original order, nor that diligent search had been made for it where it was most likely to be found.

It must be borne in mind, that in addition to the objec-

tion raised, there is no proof in the record that any one of the witnesses ever saw the alleged order to Clements; neither do any one of the witnesses testify that any one of their informants ever saw it; even Eggleston, whose testimony shows he was a most willing witness (and much doubt is cast upon both his memory and veracity by the testimony of other witnesses), although he swears most manfully that the sale was made, and that he learned it from Dewitt and Miller, yet he says he was not present when the sale was made, and never saw any writing in relation to it; he says he heard a conversation between Miller and Dewitt in the fall of 1835, a few days before Dewitt went to Mexico, from which place he never returned. It is in proof that Dewitt died in May, 1835!

In the case of Jackson v. Frier, 16 Johnson, 195, the court said: "It is an elementary rule that evidence of the execution or contents of a deed cannot be admitted without the production of the deed itself, unless it can be shown that it is in the possession of the opposite party, and he refuses to produce it after regular notice, or that it is lost or destroyed."

Again, Justice Dargan, in the case of Brewton v. Driver, 13 Ala., 826, lays down the same doctrine, as follows: ".That parol proof cannot be admitted to supply its place (a written contract) without first establishing its loss or destruction, or some sufficient reason for its non-production, is a proposition so plain that reference to authority to support it is unnecessary."

We will not quote further from the numerous authorities all sustaining our position, but will simply refer to the following causes: Taylor v. Riggs, 1 Peters, 591; Davidson v. Davidson, 10 B. Mon., 115; Bouldin. v. Massie, 5 Cond. R., 252; United States v. Britten, 2 Mason C. C., 464; Simpson & Co. v. Dall, 3 Wallace, 460.

4. The seventh charge of the court, which the appellants say is erroneous, reads as follows :

"The mere fact that at the time the judgment was rendered in favor of the administrator of Thomas R. Miller against Christopher C. and Sarah Dewitt, there was a deed on record in Gonzales county from one of the heirs of said Miller to Andrew Neil, the attorney of said Dewitt in the defense of said suit, for a part of the land in controversy in that suit, is not by itself such a circumstance as shows that the judgment was fraudulently obtained."

Article 1464, Paschal's Digest, page 359, reads thus :

"No plaintiff shall be permitted to suffer a non-suit after the jury retire from the bar ; but after argument of a cause the judge may deliver a charge to them on the law of the case, under the following restrictions, viz.: He shall not in any case, civil or criminal, charge or comment on the weight of evidence. He shall so frame his charge as to submit questions of fact solely to the decision of the jury, deciding on and instructing them as to the law arising on the facts, distinctly separating questions of law from questions of fact."

We insist that the above copied charge is a direct charge upon the weight of evidence, and mixes up questions of law and questions of fact, and precluded the jury from passing upon the facts adduced in support of the alleged fraud. For these reasons, said charge is contrary to the express provisions of the statute, and the repeated decisions of this court. (Briscoe v. Bronaugh, 1 Texas, 339 ; Graham v. Roder, 5 Texas, 148 ; 1 Texas, 326 ; 3 Shap. R., 225 ; 10 S. & R., 84 ; Id., 104 ; DeLeon v. White, 9 Texas, 603 ; Steagall v. McKellar, 20 Texas, 268 ; Drinkhard v. Ingram, 21 Texas, 655; Flack v. Neil, 22 Texas, 253 ; Howerton v. Holt, 23 Texas, 52·; Clark v. The State, 31 Texas, 577.)

Judge Story says : "But courts of equity will act

upon circumstances as presumptions of fraud where courts of law would not deem them satisfactory proof. In other words, courts of equity will grant relief upon the ground of fraud, established by presumptive evidence, which evidence courts of law would not always deem sufficient proof to justify a verdict at law. It is in this sense that the remark of Lord Hardwicke is to be understood, when he said, 'fraud may be presumed from the circumstances and conditions of the parties contracting ; and this goes farther than the rule of law, which is, that fraud must be proved, not presumed.' " (1 Story's Eq., Sec. 190.)

Burrill defines fraud in law to be, "fraud made out by construction of law, as distinguished from fraud found by a jury from matter of fact." (Law Dic., 518; Twyne's case, 3 Co., 87 ; Graham v. Roder, 5 Texas, 141 ; Thompson v. Shannon, 9 Texas, 536 ; Howerton v. Holt, 23 Texas, 60.)

In the present case, the duplicity of Neil was never discovered by his clients until judgment was rendered against them, and that judgment affirmed by this court.

What remedy have they, then ? Must they be deprived of their land by the fraud of their attorney ? All law says no ! Then their remedy is to attack the judgment when it is plead in bar to their right of recovering the land by any party, and are entitled to have all the evidence they may produce in support of their allegations of fraud passed upon and weighed by the jury, and not by the judge, contrary to law and the repeated rulings of this court.

The record discloses the fact that Neil was the paid attorney of the Dewitts; that he assumed the duties and responsibilities of their attorney, and did act as such; and that while acting as such he had a deed from one of the heirs of Miller, and thereby became, without the

knowledge of his clients, adversely to them interested in the case; that he continued to act for the Dewitts, and grossly neglected their case, and permitted judgment to go against them.

Could a stronger presumptive case of a fraudulent combination and collusion between Neil and the representative of Miller be made out? And yet the court below charged the jury, in substance, that Neil's conduct was fair upon its face, and raised no presumption of fraud!

If "there is no wrong without a remedy," certainly, then, no case could arise possessing stronger claims, both in equity and christian morals, than this, to allow the sufferers all the advantages which law and equity gives them, to remedy the grievous wrongs under which we allege they are laboring, on account of the treachery, fraud and duplicity of this Janus-faced fraud on man called Andrew Neil.

As to the point that the invalidity of the judgment on account of fraud was properly raised in the court below, we refer to 1 Story's Eq., Sec. 252; 1 Maddock's Ch. Pr., 300; Mitford's Eq. Plead., 266; Brashear v. West, 7 Peters, 616; Pratt v. Notham, 5 Mason, 103; Garnett v. Mason, 2 Brock., 213; Marine Ins. Co. v. Hodgson, 2 Conn., 526; Bateman v. Willoe, 1 Sch. & Lef., 205; Winthrop et al., v. Lane, 3 Dess., 323; Irby v. McCrae, 4 Dess., 429; Barnsly v. Powell, 1 Vesey, Sr., 289.

He was silent as the grave about his interest until he had allowed judgment to go against the Dewitts in Bexar county, and he had failed to get a bill of exceptions and statement of facts. Having got the case in this court in such a shape that its merits could not be passed upon, and feeling certain that the judgment of the court below must be affirmed, because of his own treachery, he threw off his mask of hypocrisy, and, by publishing notice of his interest, stands forth a self-convicted traitor to his

clients and a disgrace to the legal profession ; and yet the
court below charged the jury that the conduct of this
man was fair upon its face, and they should not weigh
the evidence and pass upon it!

5. The defendants' claim is a stale demand.   This was
the opinion of this court (9 Texas, 443), which shows con-
clusively that, but for the fraud of Andrew Neil in failing
to properly plead lapse of time and to see that a proper
statement of facts was made, this court in the case would
have reversed the judgment, and that they regarded the
plea raised by the pleadings in the case at bar, of lapse of
time, as a good defense to the action.

To the same point see the following cases : Hemming
v. Zimmerschitte, 4 Texas, 159; Tinnen v. Mebane, 10
Texas, 246; Wingate v. Wingate, 11 Texas, 434; Smith v.
Hampton, 13 Texas, 459; Hunter v. Holland, 26 Texas,
537; Carlisle v. Hart, 27 Texas, 350; Brown v. Guthrie,
27 Texas, 610; 9 Peters, 416; 1 How., 161; 6 B. Mon., 479.

It may be said that the defendant, Herron, was an in-
nocent purchaser of the land without notice of the plain-
tiff's claim; but that position is not tenable, for the fol-
lowing reasons :

1. He bought on the twenty-fourth of May, 1852;

2. And while the suit tried in Bexar county was pend-
ing in the Supreme Court on writ of error, which was not
decided until the Fall term, 1852.

3. And the proof in the record shows that he bought on
a credit for greatly less than its intrinsic value, and that
he had not paid for it when this suit was brought.

In addition to all this, his deed upon its face shows
that he knew he was purchasing a law suit with the land,
for we find the following language in the deed:   "The
said Herron to take said lands heretofore described, or
which may hereafter be recovered to said estate, subject
to all the litigation and costs with which they are now

encumbered, or may hereafter be encumbered, in bringing suits for the use of said estate."

*Walton & Green* and *Sheeks & Sneed,* for appellee.—If the judgment plead in bar is other than a void judgment, then the discussion need not proceed further, because the judgment in this case must be affirmed, no matter what errors may have been committed in the other and subsequent proceedings, which were directed to an investigation of merits.

I.   The plea of *res adjudicata* was resisted on two grounds, viz.: 1. That the judgment was void for want of jurisdiction in the court which rendered it.   2. That if not void for want of jurisdiction, then it was void because of fraud in Andrew Neil, the attorney of defendants in the case.

The former suit was properly brought in the first instance. The District Court of Guadalupe county obtained jurisdiction of persons and subject matter.   This will not be denied.   The order of the court changing the venue was made at the Fall term, 1847.   The laws in force in 1847, governing the trial of cases where the presiding judge was disqualified, are found in Hartley's Digest, Art. 637, p. 235; Sec. 1 of the Act of sixteenth of January, 1843; Arts. 653, 654, p. 238; Secs. 14, 15, 16, of Act of eleventh of May, 1846.   (See also Sec. 14, Art. 7, Constitution of 1845, Hartley's Digest, 72.)

There are several views in which the validity of the judgment plead in bar can be maintained over the objections denouncing it as void.   View the Constitution and statutes together.   The act of January 16, 1843, was the law of the Republic of Texas at the time of annexation, and at the date of the adoption of the Constitution of 1845.   The act of eleventh of May, 1846, was passed after the adoption of the Constitution, and, as will be noted,

has no repealing clause. (*Vide* Acts 1st Legislature, 200.)

The Constitution made it obligatory on the Legislature to provide for a change of venue in civil and criminal cases. (Sec. 14, Art. 7.)

The first session discharged that duty. How? The law in force at the time the Constitution was adopted fully provided a remedy on the subject of a change of venue. (Hartley's Digest, Arts. 636, 637.) The act of 1846, before cited, does not, by express words or by a definite mode within the body of itself, provide for a change of venue, but it was enacted (Sec. 14) "that the District Courts may order a change of venue for the trial of any suit, civil or criminal, under the rules and regulations prescribed by law." This, we conceive, was a legal incorporation into the body of the act of the articles before cited (viz., 636, 637), both of which were in force and the law of the land at the time of the adoption of the Constitution, as also when the act of 1846 became a law; and this construction is greatly strengthened by the fact that said act did not provide for a change of venue, and does not contain a repealing clause.

It would seem, from a just and reasonable construction of the act of 1846, that it was the intention of the Legislature to enlarge and not to restrict the facilities for the trial of cases where the judge labored under disqualification. The Articles 636 and 637 provided for a change of venue, while the act of 1846 permitted an interchange of ridings between the judges, and also permitted the parties to choose a special judge. This privilege was valuable, and calculated to promote the ends of justice.

2. But whether the Articles 636 and 637 were repealed or abrogated or not, it was certainly competent for the parties, under the act of 1846, to choose a special judge and proceed to trial. It was within their province to have

chosen the district judge presiding in Bexar county as special judge, and to have agreed that he should try the case in Bexar or elsewhere. The parties, having appeared at Bexar District Court, interposed no objection to the jurisdiction of the court, waived a jury and submitted the case to the court, to all intents and purposes in law made choice of said judge as a special judge to try the case; and particularly is this so when the now objectors to the judgment rendered abandoned their exception taken to the order of the court changing the venue to Bexar county, which abandonment is repeated and confirmed by the deliberate failure to assign as error in the Supreme Court said ruling of the court, not even so much as mentioning it in argument.

It was the duty of the objecting parties to make their objections known at the proper time and in the proper mode; otherwise, if the law can conclude them, they will be concluded.

Although the court may not have had power under statute law to order a change of venue, yet if the parties appeared at the court to which the venue was changed and without objection went to trial and judgment, the adjudication is final and they are estopped from contesting the validity of the judgment. (Vinsen v. Lockard, 7 Bush., Ky., 459.)

It is unquestionably true that the parties did not object by plea to the jurisdiction on the trial of the case by the district judge at Bexar county, and it is equally true that, on the hearing of the case in the Supreme Court, no objection was taken to the locality of the trial below, nor to the authority or power of the judge to preside, although at both stages they had good opportunity to be heard.

The integrity of judgments must be maintained where, without violation of law, and without hurt to good conscience, it may be done. In the Bexar case the judgment

may be affirmed as valid, without aggressing upon law or conscience, because we have every reason to conclude that the parties yielded their objections to the trial of the case by the judge of the Bexar district, and assented that he should preside and try the rights of the parties. To assent was to choose, and having so· chosen, they may not object because the judgment was against them.

3. The spirit and meaning of the law provides and guarantees that parties litigant shall have the right to have their disputed rights determined by the courts of the country.

The inability to obtain an exchange of circuits, the refusal of the party least in right to consent to a special judge, would lock the courts. Could this condition of things be permitted? May not the presiding judge order a trial, fortifying himself behind the spirit of the law, as evoked from the spirit of the Constitution, and thus evade what would be a ruinous evil? The law aforetime was that in such cases a change of venue should be had, and the law since that day has affirmed the wisdom of the rule. (*Vide* Arts. 636, 637, Hartley's Digest, p. 235, and Act of 1854, Session Acts, Vol. 14, p. 102; O. & W. Dig., p. 404.)

The venue was properly changed, and the equities of the case truly balanced between the parties; but—

4. The jurisdiction of the Guadalupe court having obtained, it was a matter of personal privilege to object to the transfer of trial from one county to another. Having failed to avail themselves of the privilege the law allows,. viz., objection *in limine*, they yield to the jurisdiction,. waive the objections they might have urged, and appeal to the merits of the case they set up. Defeated in that,. they are concluded until the judgment is reversed. The court which had obtained jurisdiction originally having transferred the locality of trial, the court to which the

case was transferred, being also a court of general juris-
diction, had *prima facie* the right to try. Although the
mode in which it obtained jurisdiction may have been ir-
regular, it amounted to no more than an irregularity, and
was cured when the proceedings ripened into judgment.
(Campbell v. Wilson, 6 Texas, 390; Voorhees v. The
Bank of the United States, 10 Pet., 449, and cases cited;
see also Vinsen v. Lockard *et al.*, 7 Bush., Ky., 458–9;
*Ex parte* Tobias Watkins, 3 Pet., 206.)

If either one of the four propositions made can be up-
held on principles of law or equity, then the judgment
rendered by the Bexar District Court, and plead in bar
in this case, was not a void judgment, and cannot be so
denounced; and we submit that both authority and prin-
ciple bear out our views.

The decision in the case of Withers v. Patterson, 27
Texas, is one of the most philosophical discussions that
has ever been made in our reports, or, indeed, in the re-
ports of any other State, upon the subjects of jurisdiction
and void judgments. That decision is especially com-
mended to the court for consideration in connection with
the case at bar. (Voorhees v. Bank, 10 Pet., 449; 7
Bush., before cited.)

It may not be denied that the question of jurisdiction
was a material issue in the case, after the change of venue
from Guadalupe county, and, having been passed on by
the District and Supreme courts, is *res adjudicata.* It
was a question in the case, or at least it might have been
made a question; and if the parties failed to make the
question, and failed to have the court pass on it, plainly,
singly, and directly, the law is that the judgment is con-
clusive upon them. (Foster v. Wells, 4 Texas, 106, and
cases cited; Weathered v. May, Id., 387; Watson v.
Hopkins, 27 Texas, 642; Hatch v. Garza, 22 Texas, 176.)

If parties are silent when they should speak, they may

not be heard when the opportunity has passed. (Hopkins v. Donoho, 1 Texas, 338 ; Allen v. Taylor, 31 Texas, 125.)

II.   It is insisted, further, that admitting the jurisdiction of the Bexar District Court to try the case, yet that the judgment is void because of fraud in Andrew Neil, the attorney of one or more of the defendants.   This argument is defective, and fatally so; because—

1. It does not follow that because Neil was actuated by fraudulent motives, therefore the judgment is void.

2. More than two years elapsed from the rendition of the judgment to the setting up of the alleged fraud.

3. There is a total failure to connect the adversary to Neil's clients with the fraud charged.

4. Neil was liable in damages for the injury done by his fraudulent practices, if guilty of any.   He is not alleged to be insolvent.

5. The fraud alleged is too general in character to be noticed, when set up to vacate the judgment of a court of record.

6. The record fails to show fraud in Neil, and fails also to show that, if fraud was present, it injuriously affected the rights of the then defendants, viz., Neil's clients.

7. If Neil was guilty of fraud, to the injury of his clients, their remedy was by suit against him for damages.

8. Fraud is a question of fact, and must be proven, not presumed.

III.   The charge of the court shows that it was admitted by both parties, on the trial below: (1) That the land in controversy was granted by the government to J. D. Clements ; (2) that it was sold by him to Green Dewitt; (3) that the plaintiffs are the heirs at law of Green Dewitt; and (4) that the vendors of defendant are the heirs at law of Thomas R. Miller.   These admissions narrowed the controversy, when stripped of the questions of former

adjudication and of fraud, to a single inquiry as to the title, and that was, did Green Dewitt, in his lifetime, sell the league of land to Thomas R. Miller? This question is not in the least affected by the adjudication in the District Court of Gonzales county in the suit of Sarah Dewitt, Administratrix, v. Joseph D. Clements, because neither Miller nor his heirs were parties to that suit; and, besides, the decree in that case expressly provides that the rights of the heirs of Miller, if any they have, should not be precluded or prejudiced by that adjudication.

That adjudication had only the effect to divest the legal title to the league of land out of Clements, who held it in trust for Green Dewitt's administratrix, and to vest the title in her, subject to such rights and equities in the heirs of Miller as Miller had acquired by his purchase from Green Dewitt.

To sustain the contract of sale by Green Dewitt to Thomas R. Miller, and the payment of the purchase money, the court is respectfully referred to the testimony.

IV.    Appellants' counsel, in their brief, lay much stress upon the question as to the admissibility of such portions of the depositions of French Smith, Joseph S. Martin, Horace Eggleston, Edward Bellinger, and A. J. Jones, as relates to the declarations of J. D. Clements respecting the sale of the league of land in suit by Dewitt to Miller.

It will be seen by reference to plaintiffs' bill of exceptions that the testimony of these witnesses, with respect to Clements' declarations, was not admitted by the court as direct evidence to prove the contract of sale from Dewitt to Miller, but was admitted only after plaintiffs and defendant had gone through their testimony, and after plaintiffs had closed their testimony in answer to and in rebuttal of the case as made by defendant by other testimony.

It is insisted that, under the peculiar circumstances of:

the admission of this testimony, the court below did not commit error; because—

1. Plaintiffs had put in evidence the transcript of the record and proceeding of the District Court of Gonzales county, in the case of Sarah Dewitt, Administratrix, v. Joseph D. Clements, involving the title to this league of land, with other land. The answer of Joseph D. Clements in that suit sets up and distinctly avers that Green Dewitt, in his lifetime, had sold the league of land in suit here to Miller, and that said league of land then formed a part of Miller's estate, and Clements, though the legal title was in him, disclaims any right or interest in this league.

That plaintiffs having put Clements' declaration in evidence, by introducing his evidence in the suit in Gonzales county, all was accomplished for defendants which could be done by Clements' statements, and that no additional force was given to his declarations, nor strength to defendants' case, by the declarations as proven by the several witnesses named.

*Terrell & Walker*, for appellants, in response, filed a brief, which is omitted on account of its length and the space already given to the case.

OGDEN, P. J.—This cause has once been decided by this court, and is reported in the 9th Volume of the Reports. The original suit was instituted in Guadalupe county, where the land in dispute is situated. The cause, by a change of venue, was taken to Bexar county, from whence it was appealed to this court, and the judgment was affirmed against the appellants. Two years afterwards this suit was instituted in Guadalupe county, and, by change of venue, removed to Travis county, and is now here again on appeal. The defendants below plead the former adjudication in bar of this suit, and also plead

to the merits.  It is claimed by appellants that the for-
mer judgment rendered in Bexar county, and affirmed by
this court, is null and void, because of the want of juris-
diction of the court in that county.  It is contended that
there was no law authorizing a change of venue from one
county or district to another, when the original suit was
decided in Bexar county, because of the relationship of
the presiding judge to one or more of the parties.  We
think a careful examination of the law in force in 1847
will clearly settle the question in favor of the power of
the court to order such change.  The statute of 1843 pro-
vides that it shall be the duty of district judges to change
the venue of any cause in which said judge may be inter-
ested, upon the motion of any practicing attorney.  There
were also statutes of 1841 and 1843, directing and requir-
ing a change of venue for other causes.  The Constitution
of 1845 provides that "The Legislature shall provide for a
change of venue in civil and criminal cases."  It further
provides, in Article 4, Section 14, that no judge shall sit in
any cause wherein he may be interested, or where either
of the parties may be related to him within a certain de-
gree.  While the act of 1846 provides that district judges
may order a change of venue, under the rules and regu-
lations prescribed by law, it also provides for the ex-
change by judges in certain cases.

The Constitution and the above laws were all in force
in 1847, and we think furnished an abundant authority
in the District Courts to order a change of venue in causes
wherein they were disqualified.  The acts of 1841-3-4
prescribe the rules and regulations by which a change of
venue is made.  The Constitution disqualifies a judge
from sitting where either party is related to him ; and the
act of 1846 empowers the judge to order a change of
venue, without limitation, excepting it must be done
under the rules and regulations prescribed by law.

It may be true that until the act of 1854 there was no law specifically authorizing a change of venue where the judge was related to one of the parties, still we are of the opinion that a reasonable construction of the Constitution and laws in force in 1847 would give the district judges full authority to order a change of venue of a case, especially in civil causes, whenever the judge was disqualified to sit in the case. And this view of the law as it then existed must have been entertained by this court when the cause was here before, since there were distinct bills of exceptions taken to the ruling of the court in ordering a change of venue, and notwithstanding this court took jurisdiction of the appeal from Bexar county and affirmed the judgment.

But it is claimed that the judgment rendered in Bexar county was and is void, because of the fraudulent acts of appellants' counsel. We have been unable to discover any proof of fraud on the part of Neil, or any one else, on the trial of the case in Bexar county; and though there may be a technical objection to the charge of the court in relation to the allegations of fraud, and the testimony offered to prove the same, yet we think that error (if one) could not have affected the judgment, since there was no evidence of any fraudulent acts on the part of the attorney who concluded the case. He may have erred, but we would hardly be willing to announce the doctrine that whenever an attorney erred he thereby committed a fraud, or that his error was even a badge of fraud. If the attorney acted in good faith, and prosecuted the case to the best of his ability, the simple fact that there was a deed on record of nearly twenty years standing which showed that he was interested in a portion of the land adversely to his client, could by no means vitiate the judgment of the District and Supreme Court.

We see no good reason to declare the judgment of the

District Court of Bexar county rendered in this cause, and the decision of this court affirming the same, null and void. And therefore we must hold that the court erred in sustaining the exceptions to the plea of *res adjudicata*. But as the case was submitted to a jury upon the merits of the cause, and a judgment rendered for the defendants, we will now affirm that judgment, without a further review of the facts of the cause, or of the many errors complained of as having been committed upon the trial.

The judgment is affirmed.

AFFIRMED.

Motion for rehearing overruled.